UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

  Plaintiff,
v.

MMPB GROUP, LLC,
d/b/a Villa Azur

  Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

  Plaintiff, James Watson ("Plaintiff") hereby sues Defendant, MMPB Group, LLC, ("Defendant") doing business as Villa Azur, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

  1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

  2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

  3. Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") utilized worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff is unable to read computer materials and/or access the internet and websites for information without the assistance of appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. at a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that

may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located in Miami-Dade County.

9. Defendant, MMPB Group, LLC, is a Florida Limited Liability Company, authorized and doing business in the State of Florida, which owns and/or operates a French restaurant branded Villa Azur Defendant's restaurant is located at 309 23rd Street, Miami Beach, Florida 33139, and open to the public. Defendant's restaurant it is a Place of Public accommodation subject to the requirements of Title III of the ADA and it's implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). Defendant's restaurant is also referenced as "place of public accommodation," "Villa Azur" or "restaurant."

10. As the owner, operator, and/or controller of restaurant open to the public, Defendant, and each of Defendant's locations are defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A]

restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

11. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, a website https://www.villaazurmiamibeach.com (hereinafter "website"). Defendant is the owner, operator, lessor and/or lessee of the website. This website supports, is an extension of, is in conjunction with, is complementary and supplemental to the above-referenced public accommodation. This website provides information about Defendant's public accommodation, including information about the special sales, goods, services, accommodations, privileges, benefits and facilities available to patrons at physical locations. On information and belief, Defendant also continually and/or periodically updates and maintains the website.

12. The website is offered as a way for the public to become familiar with "Villa Azur", menu selection, hours of operation, locations, specials and other information Defendant seeks to communicate to the public. The website allows the public to make a reservation for dining within the restaurant, purchase digital gift card for exclusive use at "Villa Azur" Miami restaurant, as well as the ability to check "Villa Azur" schedule for the upcoming especial events. Through the website the public can obtain information about "Villa Azur" private dining and catering services, and the ability to request a quote, inquire and book these services online. The website also provides links to "Villa Azur" Facebook, Twitter, Instagram, YouTube, and their information email page, and for the public to subscribe for their newsletter for exclusive offers, contests & news. By the provision of menu selection, and the ability to make a reservation and inquire about private event services, the website is an integral part of the goods and services offered by Defendant. By this nexus, the website is characterized as a Place of Public Accommodation subject to Title III of the ADA, 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2).

13. The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individual persons' homes, portable devices and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's place of accommodation. The website also provides access to the goods, services, facilities, privileges, advantages or accommodations of the place of public accommodation. As a result, Defendant's website must interact with the public, which includes Plaintiff (a visually impaired person). Therefore, Defendant's website must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

14. Like the seeing community, Plaintiff would like the opportunity to be able to use Defendant's website to comprehend "Villa Azur" menu selections, and test for the ability to inquire about "Villa Azur" private event services. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not recur, Plaintiff will continue to be denied full and equal access to the website as described.

15. Plaintiff is continuously aware of the violations on Defendant's website and is aware that it would be a futile gesture to attempt to utilize the website as long as those violations exist unless he is willing to suffer additional discrimination.

16. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website. By benefiting from and/or maintaining a website with barriers to effective communication, Defendant has deprived Plaintiff the equality of opportunity which it offers to the general public.

17. Defendant and alike restaurants are fully aware of the need to provide full access

to all visitors to its website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society

18.     Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

19.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

20.     As a result of the foregoing, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and litigation expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

21.     The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purposes.

22.     According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

23.     28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect

the privacy and independence of the individual with a disability."

24. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

25. The website has been designed to integrate with the "Villa Azur" locations through the provision of menus selection, the ability to inquire about private events services, and contact the restaurant online. Defendant has extended "Villa Azur" restaurant into individual persons' homes, portable devices and personal computers wherever located, through the website which is a service, facility, privilege, advantage, benefit and accommodation of its restaurant.

26. Plaintiff attempted to access and/or utilize Defendant's website, but was unable to, and he continues to be unable to enjoy full and equal access to the website and/or understand the content therein because numerous portions of the website do not interface with and are not readable by SRS. More specifically, features of the website that are inaccessible to the visually impaired include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

   i. Guideline 1.1.1 – Non-Text Content is violated. The Floor Plan on the Private Dining page for the Miami Beach location is not labeled. A long string of random alphanumeric characters is announced and none of the content in the image is announced. A text alternative is also not available, so users cannot access the details about the floor plan.

   ii. Guideline 2.4.3. Focus order is violated. After a user selects any of the menu names, then the associated menu content is immediately displayed, but focus remains in the menu navigation bar. A user cannot arrow directly to the menu content when it's displayed. Instead, they must press the tab key to exit the menu navigation bar, but when tab is pressed, then focus skips to the carousel slider buttons which are displayed beneath the menu.

   iii. Guideline 3.3.1 – Error Identification is violated. After submitting the Event form then error messages were displayed and each field with an error turned red, but an announcement was not made to inform user that the form wasn't submitted or that errors were present. After waiting for an announcement, we pressed the tab key and focus moved to a hidden link which was announced instead of the error messages.

    iv.    Guideline 1.4.5 – Images of Text. The Miami Spice Special popup has an image with text that details the price of the special along with the day and dates for the event, but none of the text content is announced. Instead, only "Thanksgiving - menu" is announced and users cannot navigate into the image to hear any of the promotion details.

27. Plaintiff continues to attempt to utilize the website and/or plans to continue to attempt to utilize the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to ascertain whether it has been updated to interact properly with screen reader software.

28. The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same browsing and shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

29. As the owner and/or operator and/or beneficiary of the subject website which serves as a gateway to Defendant's restaurant. Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a website that is accessible to Plaintiff so that he (as a visually impaired person) can enjoy full and equal access to the website and the content therein.

30. As more specifically set forth above, Defendant has violated the above cited provisions of the ADA by failing to interface its website with software utilized by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of his disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

  a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

  b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

  c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

  d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

  e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

  f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

  g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can

demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

   h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  31. Plaintiff is continuously aware of the violations at Defendant's website and is aware that it would be a futile gesture to attempt to utilize the website as long as those violations exist unless he is willing to suffer additional discrimination.

  32. As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to utilize the website unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives plaintiff the equality of opportunity offered to the general public.

  33. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the requirements of

the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

34.     Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

35.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

36.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

37.     Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

38.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

39.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, James Watson hereby demands judgment against Defendant, MMPB Group, LLC, d/b/a Villa Azur and requests the following injunctive and declaratory relief:

a.  The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans

    with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that determines that the Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d. That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f. That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this September 29, 2023.

> By: */s/ J. Courtney Cunningham*
> J. Courtney Cunningham, Esq.
> FBN: 628166
> J. Courtney Cunningham, PLLC
> 8950 SW 74th Court, Suite 220, Miami, Florida 33156
> T:  305-351-2014
> cc@cunninghampllc.com
> legal@cunninghampllc.com
>
> *Counsel for Plaintiff*